R. Wardell Loveland, Esq. – SBN 127736
Min K. Kang, Esq. – SBN 244906
**CODDINGTON, HICKS & DANFORTH**
**A Professional Corporation, Lawyers**
555 Twin Dolphin Drive, Suite 300
Redwood City, California 94065-2133
Telephone: (650) 592-5400
Facsimile: (650) 592-5027

**ATTORNEYS FOR** Plaintiff
Topa Insurance Company

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOPA INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>vs.<br><br>CAPITOL SPECIALTY INSURANCE CORPORATION, et al., and DOES 1 through 20,<br><br>  Defendants, | Case No.<br><br>COMPLAINT FOR:<br><br>(1) Declaratory Relief<br>(2) Equitable Indemnity<br>(3) Equitable Subrogation<br>(4) Breach of the Implied Covenant of Good Faith and Fair Dealing |

COMES NOW, plaintiff TOPA INSURANCE COMPANY, and for their complaint against defendants, and each of them, alleges and avers as follows:

**JURISDICTION**

1.   This Court has original jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

///

///

///

///

1

**PARTIES**

2. Plaintiff, Topa Insurance Company ("Topa" or "plaintiff"), is a California corporation with its principal place of business in the State of California that writes and provides, among other things, excess liability insurance for commercial entities.

3. Upon information and belief, Defendant, Capitol Specialty Insurance Corporation ("CapSpecialty" or "defendant"), is a Wisconsin corporation with its principal place of business in the State of Wisconsin that writes and provides, among other things, primary liability insurance for commercial entities.

4. The true names and capacities of defendants sued herein as DOES 1 to 20, inclusive, whether individual, corporate, business association, partnership, or otherwise, are currently unknown to Plaintiff. When Plaintiff ascertains the true names and capacities of said defendants, Plaintiff will ask leave of this Court to amend this complaint and insert said actual names and capacities in place and instead of said DOE defendants. Plaintiff is informed and believes, and based thereon alleges, that each DOE defendant is in some manner liable to Plaintiff for their damages as herein set forth.

5. At all relevant times mentioned herein Defendants, and each of them, were the agents, servants, employees, employers, joint-venturers, general partners, limited partners, co-conspirators, parent companies of wholly owned subsidiaries, holding companies, management companies, guarantors, and/or principals of each of the remaining defendants, and each of them, and all conduct, acts, omissions, contracts, agreements and/or ratifications made by defendants, and each of them, were made in the course and scope of said agency, employment, venture, partnership, conspiracy, parent company of wholly owned subsidiaries relationship, holding company relationship, guarantor relationship, and with the authorization, consent and/or ratification of the conduct of each of their co-defendants by and through their respective officers, directors, managing agents, agents, employees, employers, joint-venturers, general partners, limited partners, and/or co-conspirators.

///

///

**VENUE**

6. This litigation is a civil action over which this Court has original diversity jurisdiction pursuant to 28 U.S.C. §1332 based on diversity of the parties and the amount in controversy.

7. Venue is proper in the United States District Court for the Eastern District of California under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district. The Underlying Action arises out of a dispute regarding work performed at a building development project that is located in this District. More specifically, the alleged acts and omissions on the part of RJA Heating & Air Inc. that precipitated the claims for which coverage is sought took place in this District. Upon information and belief, the insurance contract between defendant Capitol Specialty Insurance Corporation and RJA Heating & Air Inc. that is the subject of this action was issued to RJA Heating & Air Inc. in this District. The Underlying Action was filed and litigated within this District. Therefore, venue is proper in this District pursuant to 28 U.S.C. § 1391.

8. The amount in controversy in this matter exceeds $75,000.00. Topa seeks a declaration that it is not obligated to provide coverage to RJA Heating & Air Inc. for any portion of the $1,200,000.00 settlement paid to extricate RJA Heating & Air Inc. from the Underlying Action, and seeks reimbursement from defendant Capitol Specialty Insurance Corporation of that portion of the settlement monies Topa paid, along with attorney costs and expenses described more fully herein.

**FACTUAL ALLEGATIONS**

**A.  The Underlying Action**

9. In or about January of 2016, Davis/Reed Construction, Inc. ("Davis/Reed") and RJA Heating & Air Inc. ("RJA") entered into a written agreement, and, subsequent thereto in March of 2016 a change order, whereby RJA, in exchange for payment from Davis/Reed, agreed to design and construct the Heating, Ventilating and Air Conditioning ("HVAC") systems for two apartment buildings in a development called Ice Block II and located at 1801 17th Street and 1800 18th Street, Sacramento, California (hereinafter "Subject Project").

10. On October 27, 2017, Davis/Reed filed a complaint in the Superior Court, State of California, County of Sacramento, Case No. 34-2017-00221419-CU-BC-GDS (the "Underlying Action") naming RJA as the sole defendant, setting forth causes of action for breach of contract and negligence, and seeking damages in an undisclosed amount, along with interest thereon and attorney's fees.

11. On January 3, 2018, RJA filed an answer to the Davis/Reed complaint, denying all liability and setting forth affirmative defenses to Davis/Reed's claims, along with its own cross-complaint in the Underlying Action naming Davis/Reed as a cross-defendant and setting forth causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit and account stated. RJA sought recovery of damages which it claimed it was due, owing and unpaid, along with interest thereon and attorney's fees. On or about February 1, 2018, Davis/Reed served an answer to RJA'S cross-complaint, denying all liability and setting forth affirmative defenses to RJA'S claims.

12. On June 20, 2018, Davis/Reed filed a First Amended Complaint ("FAC") in the Underlying Action, again naming RJA as the sole defendant, setting forth causes of action for breach of contract and negligence, and seeking damages in an undisclosed amount, along with interest thereon and attorney's fees.

13. On July 31, 2018, RJA filed an answer to the Davis/Reed's FAC, denying all liability and setting forth affirmative defenses to Davis/Reed's claims.

14. After obtaining leave from court, Davis/Reed's insurance carrier Indian Harbor Insurance Company ("Indian Harbor") filed a complaint-in-intervention in the Underlying Action on September 5, 2018, setting forth a single cause of action for subrogation and naming only RJA as a defendant. On October 26, 2018, RJA filed an answer to Indian Harbor's complaint-in-intervention, denying all liability and setting forth affirmative defenses to Indian Harbor's claims.

15. On August 20, 2019, RJA moved for summary judgment ("MSJ") on Indian Harbor's complaint-in-intervention, which motion was granted and judgment entered in favor of RJA on December 17, 2019.

16.     Thereafter, Davis/Reed and RJA participated in a mandatory settlement conference on November 13, 2019, and resolved all claims raised by Davis/Reed's FAC and RJA's cross-complaint in the Underlying Action for a total of $250,000.00, paid to Davis/Reed on behalf of RJA by its primary insurance carrier, Capitol Specialty Insurance Company ("CapSpecialty" or "defendant").

17.     On or about February 13, 2020, Indian Harbor filed a Notice of Appeal of the judgment entered in favor of RJA with respect to its MSJ.

18.     Thereafter, Indian Harbor and RJA, in advance of filing appellate briefs, agreed to participate in appellate mediation.

19.     Following mediation on December 15, 2020, Indian Harbor and RJA resolved all of claims, causes of action and damages asserted between them in the Underlying Action for a total of $1,200,000.00 (the "Settlement Sum"), to be paid to Indian Harbor by RJA's insurance carriers.

20.     RJA's insurance carriers involved in this matter are Rockhill Insurance Company ("Rockhill"), defendant CapSpecialty and plaintiff Topa Insurance Company ("Topa"). These three carriers paid Indian Harbor the Settlement Sum as follows: $750,000.00 by RJA's primary insurance carrier, CapSpecialty; $200,000.00 by RJA's professional liability insurance carrier, Rockhill; and $250,000.00 by RJA's excess carrier, Topa.

21.     CapSpecialty had $2,000,000 in coverage applicable to the losses discussed herein under the CapSpecialty Primary Policy but refused to pay up to that available coverage amount to extricate RJA from the Underlying Action.

22.     As between them, RJA's involved carriers Rockhill, CapSpecialty and Topa agreed for Rockhill to pay a total of $250,000.00 to settle both the Underlying Action and the claims that CapSpecialty and Topa may have against it. Rockhill paid $50,000.00 of that amount to CapSpecialty directly and $200,000.00 of that amount toward the Settlement Sum in the Underlying Action, as indicated in the preceding paragraphs.

///

///

23. These three involved carriers further agreed, understood and acknowledged that Topa had reserved all of its rights to pursue its claims against CapSpecialty in a subsequent coverage action and that Topa indeed intended to pursue same.

**B. The CapSpecialty Policy**

24. Capitol Specialty Insurance Corporation issued Commercial General Liability Policy No. CT20150656 to named insured RJA Heating & Air Inc. ("CapSpecialty Primary Policy") that provides, among other coverages, liability coverage of up to $2,000,000. The CapSpecialty Primary Policy was the primary policy, or underlying policy, to which Topa policy was excess and over.

25. Topa issued Following Form Excess Commercial General Liability Policy No. XL-6005778 to named insured RJA Heating & Air Inc. ("Topa Excess Policy") that provides excess liability coverage. The Topa policy is a "following form" excess commercial liability policy that provides liability coverage after, and only after, policies of primary or underlying insurance are fully used and exhausted.

26. Upon information and belief, CapSpecialty afforded liability coverage, including defense and indemnity, to RJA for the Underlying Action.

27. Under the CapSpecialty Primary Policy, CapSpecialty had, among other duties, an obligation to indemnify RJA in the Underlying action for up to the CapSpecialty Primary Policy's limit of $2,000,000.00.

28. In settling the Underlying Action on behalf of RJA, CapSpecialty had $2,000,000 in coverage applicable but refused to pay up to that available amount to extricate RJA from the Underlying Action.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

*Declaratory Relief*

29. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs, as though fully set forth herein.

///

30. A dispute has arisen and an actual and justiciable controversy exists between the parties with respect to each of the matters set forth herein. Defendant CapSpecialty disputes that it has/had up to $2,000,000.00 in coverage applicable to the losses described herein under the CapSpecialty Primary Policy. Conversely, plaintiff Topa maintains that CapSpecialty has/had a duty to indemnify RJA for up to $2,000,000.00 in coverage applicable to the losses described herein under the CapSpecialty Primary Policy. The CapSpecialty Primary Policy provides the following provisions relevant to the dispute at issue in this action:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

       **(1)** The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

       **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    [. . .]

    b. This insurance applies to "bodily injury" and "property damage" only if:

       **(1)** The "bodily injury" or "property damage" is caused by an occurrence" that takes place in the "coverage territory"; and

       **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    [. . .]

    [. . .]

**SECTION V – DEFINITIONS**

[. . .]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[. . .]

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

[. . .]

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[. . .]

**22.** "Your work" means:

    **a.** Work or operations performed by you or on your behalf; and

8

Complaint
Case No: 826087

  b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

  a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  b. The providing of or failure to provide warnings or instructions.

31. Under 28 U.S.C.S. § 2201, among other laws, this Court has the authority to declare the rights and legal relations of plaintiff and defendant for all matters pertaining to the coverage obligations to their mutual insured, RJA, as to the Underlying Action including, but not limited to, whether CapSpecialty has/had a duty to indemnify RJA for up to the $2,000,000.00 in available coverage under the CapSpecialty Primary Policy as to the Underlying Action.

32. Plaintiff has no other adequate remedy at law to resolve this controversy. Plaintiff will be subjected to an unreasonable burden and the risk of irrevocable injury if the rights, duties and obligations of the respective parties are not determined herein.

33. As such, plaintiff seeks a judicial determination and declaration with respect to the rights and obligations of CapSpecialty under the CapSpecialty Primary Policy, and that CapSpecialty owes a duty to indemnify plaintiff for the $250,000.00 settlement payment that plaintiff made on behalf of RJA in the Underlying Action.

## SECOND CAUSE OF ACTION

*Equitable Indemnity*

34. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs, as though fully set forth herein.

35. CapSpecialty and Topa's insured, RJA, suffered a loss for which CapSpecialty was liable because CapSpecialty was legally responsible to RJA for the loss caused by RJA as to the Underlying Action pursuant to the CapSpecialty Primary Policy.

36. Topa was not primarily liable for Davis/Reed and/or Indian Harbor's injuries, damages, and losses as to the Underlying Action because the Topa Excess Policy was an excess policy over and above the primary or underlying policy issued by CapSpecialty.

37. By issuing a payment in the amount of $250,000.00, Topa has compensated RJA for Davis/Reed and/or Indian Harbor's injuries, damages, and losses as to the Underlying Action for which CapSpecialty was primarily liable.

38. If Topa is found to be liable to RJA, Davis/Reed and/or Indian Harbor, any such liability would be passive, secondary and derivative of the primary and greater liability of fault of defendants.

39. CapSpecialty and defendants, inclusive, and each of them, owes a duty to indemnify and reimburse Topa for the $250,000.00 settlement payment that plaintiff made on behalf of RJA in the Underlying Action.

## THIRD CAUSE OF ACTION

*Equitable Subrogation*

40. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs, as though fully set forth herein.

41. CapSpecialty and Topa's insured, RJA, suffered a loss for which CapSpecialty was liable because CapSpecialty was legally responsible to RJA for the loss caused by RJA as to the Underlying Action pursuant to the CapSpecialty Primary Policy.

42. Topa was not primarily liable for Davis/Reed and/or Indian Harbor's injuries, damages, and losses as to the Underlying Action because the Topa Excess Policy was an excess policy over and above the primary or underlying policy issued by CapSpecialty.

43. By issuing a payment in the amount of $250,000.00, Topa has compensated RJA for Davis/Reed and/or Indian Harbor's injuries, damages, and losses as to the Underlying Action for which CapSpecialty was primarily liable.

44. Topa paid Davis/Reed and/or Indian Harbor's claims on behalf of RJA in the Underlying Action to protect its own interest and not as a volunteer.

45. RJA has, and would have, an existing, assignment cause of action against CapSpecialty that RJA could have asserted for its own benefit had it not been compensated for its loss by Topa.

///

46. Topa suffered damages caused by CapSpecialty's acts and omissions including, but not limited to (a) its failure to offer up to its available policy limits of $2,000,000.00 to resolve the Underlying Action as to RJA despite it knowing that Indian Harbor had demanded, and was willing to accept, $1,200,000.00, and that the claims in the Underlying Action were worth at least that amount at around the time of mediation in December 2020; (b) its failure to accept a reasonable settlement within its available policy limits of $2,000,000.00; and (c) forcing Topa to contribute and make a payment to protect their mutual insured only because of its acts and omissions set forth above, among other things.

47. Justice requires that Topa's losses for the payment that it issued in the amount of $250,000.00 to Indian Harbor be entirely shifted to CapSpecialty, whose equitable position is inferior to that of Topa because its acts and omissions caused Topa's losses as set forth in the preceding paragraph.

48. Topa's damages are in a liquidated sum.

## FOURTH CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

49. Plaintiff re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs, as though fully set forth herein.

50. CapSpecialty, as the primary or underlying insurance carrier, owed an implied duty to Topa, as the excess insurer to, and over, the CapSpecialty Primary Policy to accept reasonable settlement demands on covered claims as to RJA within its policy limits where liability is not contested, and that duty is included within the implied covenant of good faith and fair dealing that all insurance companies owe.

51. CapSpecialty breached the duty of the implied covenant of good faith and fair dealing to accept a reasonable settlement demand made by Indian Harbor on a covered claim as to RJA within its policy limits where CapSpecialty did not contest liability.

52. Topa, as the excess insurer, was required to contribute to the total settlement to protect RJA, the mutual insured of Topa and CapSpecialty, because of CapSpecialty's breach of the implied covenant of good faith and fair dealing by CapSpecialty's acts and omissions

including, but not limited to (a) its failure to offer up to its available policy limits of $2,000,000.00 to resolve the Underlying Action as to RJA despite it knowing that Indian Harbor had demanded, and was willing to accept, $1,200,000.00, and that the claims in the Underlying Action were worth at least that amount at around the time of mediation in December 2020; (b) its failure to accept a reasonable settlement within its available policy limits of $2,000,000.00; and (c) forcing Topa to contribute and make a payment to protect their mutual insured only because of its acts and omissions set forth above.

53. CapSpecialty's breach of the duty of the implied covenant of good faith and fair dealing caused Topa to sustain, experience, and undergo losses including, but not limited to, the $250,000.00 settlement proceeds that it contributed to extricate their mutual insured, RJA, from the Underlying Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For reimbursement to plaintiff of the amounts plaintiff has paid on behalf of RJA to settle the Underlying Action in the amount of $250,000.00;

2. For a judicial declaration of rights, obligations and duties under the CapSpecialty Primary Policy with respect to the Underlying Action;

3. For a judicial declaration of plaintiff's and defendants' respective rights, obligations and duties in connection with the matters herein alleged;

4. For a judicial declaration that defendants owe a duty to indemnify plaintiff for the $250,000.00 sums paid by plaintiff in settling the Underlying Action, plus pre-judgment interest;

5. For a judicial declaration that plaintiff had no obligation to indemnify RJA in the Underlying Action;

6. For pre-judgment interest;

7. For costs of suit incurred herein;

8. For attorney's fees; and

12

Complaint
Case No:

826087

9. For such other and further relief as the Court may deem just and proper and as the interests of justice may require.

Dated: February 2, 2022

CODDINGTON, HICKS & DANFORTH

By: */s/ Min K. Kang*
R. Wardell Loveland
Min K. Kang
Attorneys for Plaintiff
Topa Insurance Company